# United States Court of Appeals
## For the First Circuit

No. 02-2223

FRANCES STONKUS,

Plaintiff, Appellant,

v.

CITY OF BROCKTON SCHOOL DEPARTMENT; RICHARD E. ZOINO;
ANTONIO M. CABRAL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Michael M. Kramer on brief for appellant.
Rebecca J. Wilson, Sandra P. Criss and Peabody & Arnold LLP,
on brief, for appellees.

March 14, 2003

**STAHL, Senior Circuit Judge.** In this wrongful termination case, plaintiff-appellant Frances Stonkus appeals from the district court's grant of summary judgment to her former employers, defendant-appellees City of Brockton School Department, Brockton High School Science Department Head Antonio M. Cabral and Brockton High School Housemaster Richard Zoino (collectively, "defendants"). We affirm.

## I. BACKGROUND

### A. Factual background

The following facts are undisputed.[1] Stonkus was hired as a biology teacher at Brockton High School beginning September, 1994. She was fifty-two years old at the date of hire. She received satisfactory performance evaluations for her first two years of teaching, and was twice reappointed for successive year-long terms.

On or about October 2, 1996, while teaching a biology class, Stonkus and a male student engaged in a verbal exchange about the male reproductive organ. The student complained to Zoino, who conducted an investigation into the matter. The investigation included interviewing several students from the class

---

[1]Except where otherwise noted, we draw the factual background from the defendants' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment. As discussed in more detail infra, these facts were properly deemed admitted in the absence of opposition by Stonkus pursuant to the District of Massachusetts Local Rule 56.1.

and holding a conference with the student's parents. Cabral and Zoino also observed Stonkus's classroom performance and concluded that certain areas "needed improvement."

On or about February 5, 1997, Stonkus filed a grievance with the assistance of the Brockton Education Association alleging that Zoino's handling of the student's complaint violated the terms of an applicable collective bargaining agreement. In May, 1997, while the grievance process was still ongoing, Stonkus received notification that she would not be rehired for the following school year. In August, 1997, Stonkus entered into a "Memorandum of Agreement" with Brockton, in which it agreed to rehire Stonkus without tenure for the 1997-98 school year. The Agreement contained an explicit waiver of any and all claims Stonkus could bring to challenge a decision the defendants might later make not to reappoint Stonkus for the 1998-99 school year.

Stonkus alleges in her complaint that following her initial termination in May, 1997, Cabral hired two new female teachers, aged 21 and 30. Upon Stonkus's return to teaching in September, 1997, the classroom regularly assigned to her for the past three years was given to one of the new hires. Stonkus alleges that she was given as her space the corner of a small project room. According to her, as a result she had to use three carts to move her materials from room to room each day.

Stonkus's superiors found her teaching performance during

the 1997-98 school year to be unsatisfactory, and she was not rehired for the following school year. In her complaint, Stonkus alleges that she has not been able to secure other employment. In her subsequent job search, she claims, two school systems advised Stonkus that she was their first choice for a position as a science teacher before calling Brockton for a reference. After the conversations with Brockton, Stonkus was not hired for either position. Later, the positions were re-advertised.

**B.      Procedural history**

On February 2, 2001, Stonkus filed a complaint in the Massachusetts Superior Court alleging violations of the state constitution, the Massachusetts Civil Rights Act, and 42 U.S.C. § 1983; breach of contract, both express and implied; age and gender discrimination in violation of Mass. Gen. Laws ch. 151B; wrongful termination; defamation by Cabral; and intentional interference with contractual relationships by Zoino. The defendants removed this action to the United States District Court.

On July 18, 2001, the district court conducted a scheduling conference and ordered the completion of all discovery by November 16, 2001, the filing of dispositive motions by April 19, 2002, and the filing of responsive pleadings by May 20, 2002. In November, 2001, near the end of the discovery period, the parties filed a Joint Motion to Extend the Scheduling Order Deadline, which the court allowed. This provided for the

completion of discovery by April 19, 2002, the filing of motions by June 18, 2002, and the filing of responsive pleadings thirty days thereafter.

On June 18, 2002, the defendants filed a Motion for Summary Judgment on all of the claims set forth in Stonkus's complaint. Stonkus failed to file an opposition. On August 15, 2001, the District Court allowed the Summary Judgment Motion with the following order: "The Plaintiff has filed no opposition to this motion. Based on the undisputed facts as presented in the defendants' papers, the defendants are entitled to judgment as a matter of law on all claims. Judgment shall enter for the defendants accordingly." On August 19, 2002, judgment entered in favor of the defendants on all counts.

Stonkus filed a Motion for Relief from Judgment pursuant to Fed. R. Civ. P. 60(b) and for Late Filing of Responsive Pleading, which the defendants opposed. The District Court denied the motion, and Stonkus appealed.

## II.    DISCUSSION

### A.    Rule 60(b)(1) ruling

Stonkus contends that the district court erred in refusing to allow her to belatedly file her opposition to the defendants' motion for summary judgment. She maintains, on appeal, that her failure to timely file was due to her counsel's confusion over the filing deadlines and "frenetic activity to complete

-5-

discovery," and that these circumstances constituted "excusable neglect" warranting relief under Fed. R. Civ. P. 60(b)(1).[2]

> Rule 60(b)(1) provides, in relevant part:
>
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . .. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Motions brought under Rule 60(b) are committed to the district court's sound discretion. Torre v. Continental Ins. Co., 15 F.3d 12, 14 (1st Cir. 1994). Accordingly, we review orders denying such motions only for abuse of discretion. Id. Because Rule 60(b) is a vehicle for "extraordinary relief," motions invoking the rule should be granted "only under exceptional circumstances." Id. at 14-15 (quoting Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986)).

---

[2]In the Motion for Relief from Judgment, Stonkus did not specifically identify excusable neglect as a basis for her failure to file an opposition; rather, she stated that "Plaintiff's counsel believed that consent of the court would be necessary to allow for consideration of [defendants' motion for summary judgment] filed beyond the agreed-upon filing deadlines." (This excuse is unavailing, as the record indicates that in fact the summary judgment motion was filed on the last day permitted by the amended scheduling order.) Accordingly, the defendants contend that Stonkus should be precluded from asserting on appeal that she failed to file an opposition for any other reasons. Because we hold that in this case, Stonkus's excuses presented on appeal do not compel reversing the district court, we do not address the defendants' waiver argument.

-6-

We interpret these authorities in light of Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993), in which the Supreme Court explored the meaning of excusable neglect in the context of a parallel provision in the federal bankruptcy rules.[3] Davila-Alvarez v. Escuela de Medicina Universidad Central Del Caribe, 257 F.3d 58, 63 (1st Cir. 2001). The Court held that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 395. These circumstances include "the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id.

Even under the flexible standard prescribed by Pioneer, we see no abuse of discretion in the district court's decision refusing to allow Stonkus to belatedly oppose the defendants' motion for summary judgment. The stated reasons for the neglect -- confusion over filing dates and busyness -- hold little water. It is uncontested that Stonkus's counsel received several written documents, both from the defendants' counsel and from the district court, concerning the extended scheduling deadlines; that counsel

---

[3]Fed. R. Bankr. P. 9006(b)(1) permits the enlargement of time for certain actions "where the failure to act was the result of excusable neglect."

-7-

engaged in telephone and in-person discussions concerning the extended deadlines; and that prior to filing the motion for summary judgment, defendants' counsel again advised Stonkus's counsel of their intent to file a summary judgment motion on June 18, 2002, and reminded Stonkus's counsel that he had thirty days to respond under the extended scheduling order.

We have repeatedly held this type of counsel error to be inadequate to support a determination of excusable neglect within the meaning of Fed. R. Civ. P. 60(b)(1). Torre, 15 F.3d at 15 (fact that appellant's attorney was "preoccupied" with other matters did not constitute excusable neglect), and cases cited. "Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences." Id. (quoting Pinero Schroeder v. FNMA, 574 F.2d 1117, 1118 (1st Cir. 1978) (internal quotation marks omitted)).

We question, too, the good faith behind these excuses: there is little indication, for example, of the "frenetic activity to complete discovery" Stonkus's counsel cites.[4] And Stonkus never proffered a proposed opposition to summary judgment in her filings

---

[4]At no time in this litigation did Stonkus's counsel propound interrogatories, requests for documents or requests for admissions. Nor did he take any depositions of the defendant School Department employees or representatives other than the individual defendants Zoino and Cabral.

to the district court. As to prejudice, although there are no unusual circumstances in this case, the delay incurred by Stonkus's failure to respond serves to hamper the defendants' interest in certainty and resolution and to further diminish witnesses' memories concerning the events surrounding Stonkus's claims, now more than six years old. In sum, Stonkus's counsel's conduct simply does not warrant relief from judgment under an excusable neglect theory.

**B.**          **Summary judgment**

Although we affirm the district court's decision to bar Stonkus's opposition to defendants' motion for summary judgment, it does not automatically follow that the defendants' motion was properly granted. Fed. R. Civ. P. 56(e) of the Federal Rules of Civil Procedure provides:

> [W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, <u>if appropriate</u>, shall be entered against the adverse party.

(emphasis added). We also take into account District of Massachusetts Local Rule 56.1, which provides, "[m]aterial facts of record set forth in the statement required to be served by the

moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties."

Because Stonkus did not controvert the statement of undisputed material facts that the defendants filed with their summary judgment motion, we deem those facts admitted and consider whether summary judgment was appropriate. We review the district court's grant of summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor. Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002). Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Defendants contend that they are entitled to summary judgment because in August, 1997, Stonkus signed a Memorandum of Agreement under which she waived all claims with respect to non-reappointment. The Agreement states, in relevant part,

> [I]f the decision is ultimately made not to reappoint her for the 1998-99 school year, Ms. Stonkus hereby waives any ability to challenge such decision in any forum whatsoever, including, but not limited to, G.L. Chapter 71, Section 42, via the grievance procedure in the collective bargaining agreement, or via a

complaint to any court or administrative agency.

In <u>Rivera-Flores</u> v. <u>Bristol-Myers Squibb Caribbean</u>, 112 F.3d 9, 11 (1st Cir. 1997), we noted that in the employment law context, courts have routinely upheld releases given in exchange for additional benefits. "Such releases provide a means of voluntary resolution of potential and actual legal disputes, and mete out a type of industrial justice." <u>Id.</u> Nearly all of the claims set forth in Stonkus's complaint explicitly focus on the defendants' failure to reappoint her to an additional term of employment.[5] Accordingly, we conclude that Stonkus's claims are barred under the Agreement.

Stonkus offers only one argument in opposition: that the Agreement was not a "knowing and voluntary" waiver within the meaning of the Older Workers Benefit Protection Act amendments to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(f)(1). The amendments provide, in relevant part:

> 1) an individual may not waive any right or claim under this Act unless . . .

---

[5]The only claims that do not directly center on reappointment are Stonkus's express breach of contract claim (which concerns the collective bargaining agreement between the Brockton School Committee and the Brockton Education Association) and her defamation claim (which concerns Cabral's representations to potential employers following her termination). We need not grapple with whether these claims are implicitly barred by the Agreement, or, as defendants contend, fail on their merits, because Stonkus does not raise the issue on appeal. Rather, as set forth <u>infra</u>, Stonkus's only argument regarding the Agreement on appeal is that it did not conform with ADEA requirements.

(B) the waiver specifically refers to rights
or claims arising under this chapter;

* * * *

(F)(i) the individual is given a period of at
least 21 days within which to consider the
agreement;

* * * *

(G) the agreement provides that for a period
of at least 7 days following the execution of
such agreement, the individual may revoke the
agreement . . . .

Id. Stonkus contends that the Agreement lacked the foregoing
elements.

This argument gets Stonkus nowhere, however, in light of
the fact that she apparently did not bring an ADEA claim in this
case.[6] Rather, her age discrimination claim is pursuant to Mass.
Gen. Laws. ch. 151B, which requires none of the pertinent elements
of section 626(f)(1). Nor is Stonkus's ADEA argument relevant to
any of the other claims she sets forth in her complaint.
Accordingly, we hold that the defendants were entitled to judgment

---

[6]The heading of the age discrimination claim in her complaint
reads "Age Discrimination, MGL 151B." Stonkus does mention the
ADEA elsewhere in her complaint, but appears to refer to the waiver
requirements set forth at 29 U.S.C. § 626(f)(1). Furthermore, she
does not argue on appeal that she asserted an ADEA claim in her
complaint. In any event, taking the defendants' statement of
material facts as true, we must conclude that Stonkus's termination
was based on her job performance rather than discriminatory animus.
Accordingly, her age discrimination claim fails on its merits as
well.

-12-

as a matter of law on the ground that the Agreement barred Stonkus's claims.

For the reasons set forth <u>supra</u>, we **AFFIRM** the district court's award of summary judgment to the defendants.