# DOREEN ANN AHERN *v.* MATTHEW KAPPALUMAKKEL ET AL.
## (AC 26081)

Schaller, Gruendel and Stoughton, Js.

Argued January 10—officially released August 22, 2006

*Doreen Ann Ahern*, pro se, the appellant (plaintiff).

*Timothy P. Pothin*, with whom, on the brief, were *Hugh F. Keefe* and *Marisa A. Bellair*, for the appellee (named defendant).

*Lorinda S. Coon*, for the appellee (defendant Archdiocese of Hartford).

*Opinion*

SCHALLER, J. The plaintiff, Doreen Ann Ahern, appeals from the trial court's rendering of summary judgment in favor of the defendants, Matthew Kappalumakkel and the Archdiocese of Hartford (archdiocese). The determinative issue on appeal is whether the court improperly granted the defendants' motions for summary judgment by concluding that a fiduciary relationship did not exist between the plaintiff and Kappalumakkel, and, therefore, the archdiocese was not liable for negligent supervision. We conclude that a fiduciary relationship did not exist and, accordingly, the archdiocese was not liable for negligent supervision.

The record reveals the following facts and procedural history. In April, 1996, the plaintiff, who was forty years old and had a long history of psychiatric and emotional problems, sought out the "advice, counsel and friendship" of Kappalumakkel. At the time, Kappalumakkel was serving as an associate priest at Our Lady of Victory Church in West Haven and was an employee of the archdiocese.[1] The plaintiff did not engage in formal counseling with Kappalumakkel; rather, their relationship involved mainly recreational activities such as

[1] At no point during the plaintiff's interactions with Kappalumakkel was she a registered parishioner of Our Lady of Victory Church.

home visits, lunch and dinner dates, shopping trips, walks on the beach and trips to see movies.[2] According to the plaintiff, at some point during their association, Kappalumakkel became aware of her emotional problems and, nevertheless, engaged her in a consensual, sexual relationship. The plaintiff also alleges that she eventually ended the sexual aspect of their relationship after which Kappalumakkel terminated all involvement with her.

Subsequently, on September 10, 2001, the plaintiff initiated the present action by way of a two count complaint. The first count alleged that Kappalumakkel owed the plaintiff a fiduciary duty by virtue of the priest-parishioner relationship and breached that duty when, despite knowledge of her emotional problems, he engaged her in "a close physical and intimate relationship." The complaint further alleged that Kappalumakkel's breach caused the plaintiff psychiatric and emotional injuries.

The second count of the plaintiff's complaint alleged that the archdiocese breached its duty to supervise Kappalumakkel. Specifically, the plaintiff alleged that the archdiocese "knew or should have known that . . . Kappalumakkel had engaged in inappropriate behavior with the plaintiff" and, as a result, the archdiocese was liable for Kappalumakkel's breach of fiduciary duty.

In response to the plaintiff's complaint, both defendants filed numerous motions for summary judgment. On August 2 and 14, 2002, respectively, the archdiocese and Kappalumakkel moved for summary judgment on the grounds that the applicable statutes of limitations

---

[2] The plaintiff claims that Kappalumakkel provided her emotional, spiritual and friendly support and that her whole relationship with him was one of counseling.

barred the plaintiff's action.[3] Subsequently, on September 26, 2003, Kappalumakkel renewed and supplemented his earlier motion for summary judgment with the additional ground that the plaintiff's deposition testimony revealed that a fiduciary relationship did not exist between her and Kappalumakkel. On November 17, 2003, the archdiocese also filed a supplemental motion for summary judgment and argued not only that the claim was barred by the applicable statute of limitations, but also that the plaintiff's claim amounted to a "heart balm" action, which is not recognized under Connecticut law.

On March 9, 2004, the court, *A. Robinson, J.*, granted Kappalumakkel's motion for summary judgment on the ground that no fiduciary relationship existed and therefore that "the evidence fail[ed] to establish that . . . Kappalumakkel owed the plaintiff a fiduciary duty." Judge Robinson, however, denied the archdiocese's motion for summary judgment on the statute of limitations and heart balm grounds, and declined to decide whether the plaintiff's negligent supervision claim could survive the dismissal of the underlying breach of fiduciary duty claim. Judge Robinson explained that because neither party had addressed this issue, she would not speculate as to the parties' positions on the matter.

Thereafter, on July 1, 2004, the archdiocese once again moved for summary judgment and argued: (1) because Judge Robinson found that no fiduciary duty existed between the plaintiff and Kappalumakkel, it could not be held vicariously liable for the alleged breach; (2) it could not be held vicariously liable for the alleged misconduct of Kappalumakkel because such

---

[3] Negligent supervision is a negligence action governed by the two year statute of limitations contained within General Statutes § 52-584. Breach of fiduciary duty is a tort action governed by the three year statute of limitations contained within General Statutes § 52-577.

misconduct was not, as a matter of law, within the scope of Kappalumakkel's employment; and (3) it could not be held liable for negligent supervision because an employer cannot be held liable for negligent supervision under circumstances in which the employee as a matter of law did not engage in tortious behavior.

On December 1, 2004, the court, *Carroll, J.*, granted the archdiocese's motion for summary judgment on the ground that "[a]n essential element to the tort of negligent supervision is that the conduct of the employee whom the employer is accused of failing to supervise was itself tortious. . . . By virtue of Judge Robinson's finding that there existed no such fiduciary duty, this court is constrained to find that . . . Kappalumakkel *engaged in no tortious or actionable wrong* for which liability could be imputed to the . . . archdiocese." This appeal followed.

On appeal, the plaintiff first claims that Judge Robinson improperly granted Kappalumakkel's motion for summary judgment. In support of this claim, the plaintiff essentially argues that the court improperly concluded that a fiduciary relationship did not exist between her and Kappalumakkel. We disagree.

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are

legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 597, 894 A.2d 335 (2006).

At the outset, we note that a prerequisite to finding a fiduciary duty is the existence of a fiduciary relationship, and neither this court, nor our Supreme Court, has specifically addressed whether a clergy-parishioner relationship may give rise to a cause of action for breach of fiduciary duty. Our Supreme Court has chosen to maintain an imprecise definition of what constitutes a fiduciary relationship in order to ensure that the concept remains adaptable to new situations. See *Alaimo* v. *Royer*, 188 Conn. 36, 41, 448 A.2d 207 (1982) (our Supreme Court has "specifically refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other" [internal quotation marks omitted]). Consequently, under Connecticut law, a fiduciary or confidential relationship is broadly defined as a relationship that is "characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Citations omitted.) *Dunham* v. *Dunham*, 204 Conn. 303, 322, 528 A.2d 1123 (1987), overruled in part by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996).

In light of our Supreme Court's adaptable definition of what constitutes a fiduciary relationship, we see no

reason why a fiduciary relationship cannot exist within the clergy-parishioner context. That said, because no Connecticut appellate case law directly addresses under what circumstances a clergy-parishioner relationship may give rise to an actionable fiduciary duty, it is useful to examine the relevant case law from other jurisdictions.

Although various state and federal courts have concluded that a clergy-parishioner relationship may constitute a fiduciary relationship, in those cases, "something more" than a general clergy-parishioner relationship was present. See *Doe* v. *Hartz*, 52 F. Sup. 2d 1027, 1065 (N.D. Iowa 1999) ("courts permitting breach-of-fiduciary-duty claims against members of the clergy have . . . required something more than a priest-parishioner relationship"). For example, the existence of a formal pastoral counseling relationship between a clergy member and a parishioner has been deemed significant in determining whether a fiduciary relationship was created.[4] In *F.G.* v. *MacDonell*, 150 N.J. 550, 696 A.2d 697 (1997), the New Jersey Supreme Court concluded that a breach of fiduciary duty claim arising

[1] See *Sanders* v. *Casa View Baptist Church*, 134 F.3d 331, 337 (5th Cir.) (permitting breach of fiduciary duty claim to proceed against clergyman, despite claim of first amendment bar, because duty alleged arose out of counseling relationship, not simply a clergy-parishioner relationship), cert. denied sub nom. *Baucum* v. *Sanders*, 525 U.S. 868, 119 S. Ct. 161, 142 L. Ed. 2d 132 (1998); *Doe* v. *Hartz*, supra, 52 F. Sup. 2d 1065 (dismissing plaintiff's breach of fiduciary duty claim because plaintiff simply alleged clergy-parishioner relationship, not counseling relationship); *Moses* v. *Diocese of Colorado*, 863 P.2d 310, 321 (Colo. 1993) (en banc) (concluding that record supported jury's finding that fiduciary relationship existed between clergyman, plaintiff, in part, because clergyman had served as counselor to plaintiff), cert. denied, 511 U.S. 1137, 114 S. Ct. 2153, 128 L. Ed. 2d 880 (1994); *Destefano* v. *Grabrian*, 763 P.2d 275, 284 (Colo. 1988) (en banc) (concluding that fiduciary duty created when priest undertook to counsel plaintiffs); *F.G.* v. *MacDonell*, 150 N.J. 550, 696 A.2d 697 (1997) (holding that breach of fiduciary duty claim arising out of sexual relationship between clergyman and parishioner who was seeking marital counseling, permissible under New Jersey law).

out of the sexual relationship between a clergyman and a parishioner who was seeking marital counseling was permissible under New Jersey law. In so doing, the court placed considerable weight on the fact that the plaintiff was engaged in a specific pastoral counseling relationship with the clergyman. According to that court, "[t]rust and confidence are vital to the counseling relationship between parishioner and pastor. By accepting a parishioner for counseling, a pastor also accepts the responsibility of a fiduciary." Id., 564. Consequently, the court explained that "[e]stablishing a fiduciary duty essentially requires proof that a parishioner trusted and sought counseling from the pastor." Id., 565.

In contrast, in *Doe* v. *Hartz*, supra, 52 F. Sup. 2d 1065, the court dismissed a claim of breach of fiduciary duty against a parish priest because no counseling relationship existed. There, an adult plaintiff brought a breach of fiduciary duty claim against her parish priest after he allegedly molested her before and after an evening mass. Id., 1035. Specifically, the plaintiff alleged that, "[a]s a member of the clergy, [the defendant priest] had a [fiduciary] duty to act in her best interests, and specifically a duty to not sexually abuse the [p]laintiff." (Internal quotation marks omitted.) Id., 1058. The *Doe* court disagreed and concluded that the defendant's status as a priest, without more, was insufficient to establish a fiduciary relationship. The court explained that "in those cases permitting a breach-of-fiduciary-duty claim against a member of the clergy to go forward, the claim was allowed because something more than a general priest-parishioner relationship was the basis for the fiduciary duty." Id., 1065. The court acknowledged that when courts have permitted breach of fiduciary duty claims against members of the clergy, pastoral counseling often has been present, and the

court subsequently dismissed the plaintiff's claim because no counseling relationship was alleged. Id.

The United States Court of Appeals for the Second Circuit has also required something more than a general clergy-parishioner relationship in order to create a fiduciary relationship. In *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409 (2d Cir. 1999), the plaintiff brought a breach of fiduciary duty claim against a diocese. Specifically, that plaintiff, who was fourteen at the time of the alleged abuse, claimed that a priest of his parish abused his position of trust and induced members of a church sponsored youth group to engage in sexual relations with him. Id., 414. Ultimately, the Second Circuit upheld the jury's finding that a fiduciary relationship existed between the plaintiff and the diocese. The court based its finding of a fiduciary relationship not on the general clergy-parishioner relationship, but rather on the "particulars of [the plaintiff's] ties to [the abusive priest] and the [d]iocese's knowledge and sponsorship of that relationship . . . ." Id., 429. The court found the relationship to be fiduciary in nature because the diocese had sponsored and encouraged the abusive priest's contact with the youth of the parish, the plaintiff attended a Catholic high school within the diocese, participated in church sponsored activities, including the liturgical reform group for which the priest served as a mentor and spiritual adviser, and had been taught throughout grade school catechism classes to trust and respect the bishop of the diocese, whom he considered his "caretaker and moral authority." Id.

Interpreting *Martinelli*, subsequent Connecticut trial court decisions have attached significance to the fact that the *Martinelli* plaintiff was a minor and was entrusted to the care of the diocese. In *Doe* v. *Baker*, Superior Court, judicial district of New Haven, Docket No. CV99-0427137S (January 10, 2000), an adult plaintiff

brought a breach of fiduciary duty claim against the pastor of her church, where she also worked as a secretary. The defendant pastor, who had become a father figure to the plaintiff and on whom the plaintiff had become emotionally dependent for advice, allegedly engaged her in consensual, sexual conduct. In denying the plaintiff's application for a prejudgment remedy, the *Baker* court distinguished *Martinelli* on two grounds. First, the court stressed that *Martinelli* involved a "minor child who entrusted his teachings and moral authority to the [d]iocese." Second, the court noted that given the consensual nature of the parties' relationship, the case lacked a "justifiable trust confided on one side and a resulting superiority and influence on the other." (Internal quotation marks omitted.)

Likewise, in *DeCorso* v. *Watchtower Bible & Tract Society of New York, Inc.*, Superior Court, judicial district of Waterbury, Docket No. CV98-0145296S (October 13, 2000), an adult plaintiff brought a breach of fiduciary action against her church and certain elder members of her church. The plaintiff alleged that the defendants were responsible for the abuse she endured at the hands of her husband. The court granted the defendants' motion to strike the breach of fiduciary duty claim and noted that, unlike *Martinelli*, the case did not involve a minor child whose teaching and moral authority was entrusted to the diocese. The court further held that "because the . . . case does not involve a minor child, it does not involve a justifiable trust confided on one side and a resulting superiority and influence on the other." (Internal quotation marks omitted.)

In the present case, the plaintiff takes issue with the reasoning that "something more" than the general clergy-parishioner relationship must be present to establish a fiduciary relationship. We believe, however, that reasoning to be sound and, accordingly, decline the plaintiff's invitation to establish a per se fiduciary

relationship between all clergy and their congregants. While we acknowledge that the phrase "something more" is an amorphous guidepost, we find the relevant case law of our sibling jurisdictions persuasive. We turn now to our examination of whether a fiduciary relationship existed in the present case.

Assuming, as we must, that all of the plaintiff's allegations are true, we still cannot conclude that the relationship between her and Kappalumakkel was characterized by the unique degree of trust and confidence required of a fiduciary relationship. The plaintiff has not alleged a formal pastoral counseling relationship between herself and Kappalumakkel. Rather, she claims that her "whole association" with Kappalumakkel was one of "counseling." The record belies that point. The plaintiff's interactions with Kappalumakkel were largely social. She did not meet Kappalumakkel for specific counseling appointments, but, rather, the two went on lunch and dinner dates, shopping trips, walks on the beach and trips to see movies. Also, the plaintiff has admitted that many of the conversations she considered "counseling," took place immediately after mass with other congregants present and that the "counseling" primarily involved discussions about their relationship. We agree with the court that, while Kappalumakkel may have counseled the plaintiff from time to time, as a priest may for any parishioner, he was not her counselor. Moreover, unlike the plaintiff in *Martinelli*, the plaintiff in the present case was not a minor entrusted to the care of Kappalumakkel. Rather, she was well over the age of majority throughout the time of their consensual interactions.[5] While we do not condone

[5] In the present case, Judge Robinson held that the consensual nature of a relationship does not necessarily render that relationship nonfiduciary. She explained that an individual's consent can be gained through coercion or manipulation and, therefore, a power imbalance sufficient to justify a finding of a fiduciary duty could be present. We note that, in our determination of this matter, the issue of consent is not dispositive.

the defendant's behavior, we conclude that no fiduciary relationship existed between him and the plaintiff; consequently, no fiduciary duty was breached. We conclude, therefore, that the court properly rendered summary judgment in favor of Kappalumakkel.

The plaintiff's next claim is that Judge Carroll improperly rendered summary judgment in favor of the archdiocese with respect to the second count of her complaint, negligent supervision. The plaintiff, however, conceded at oral argument that her claim against the archdiocese is necessarily dependent on our decision with respect to her claim against Kappalumakkel. Because we conclude that Judge Robinson properly rendered summary judgment in favor of Kappalumakkel, we likewise conclude that Judge Carroll properly rendered summary judgment in favor of the archdiocese.

The judgment is affirmed.

In this opinion the other judges concurred.