******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ENRICO VACCARO *v.* SHELL BEACH
CONDOMINIUM, INC., ET AL.
(AC 37811)

Sheldon, Prescott and Bear, Js.

*Argued May 17—officially released October 18, 2016*

(Appeal from Superior Court, judicial district of New
Haven, Wilson, J.)

*Enrico Vaccaro*, self-represented, with whom, on the
brief, was *Emily A. Gianquinto*, for the appellant
(plaintiff).

*Sharon Baldwin*, for the appellee (named defendant).

*Daniel J. Krisch*, with whom was *Joshua M. Auxier*,
for the appellees (defendant Andrew Hames et al.).

*Opinion*

BEAR, J. The plaintiff, Enrico Vaccaro, appeals from the summary judgment rendered by the trial court in favor of the defendants, Shell Beach Condominium, Inc. (association), and certain individual members of its board of directors, Andrew Hames, Frank Meolli, Michael Gagliardi, Michelle Augliera, and Raymond Vermette (individually named defendants), on the basis that all of the plaintiff's claims arising from the deprivation of the use of a particular garage were time barred. The plaintiff argues that the court erred in rendering summary judgment in favor of the defendants, because, inter alia: (1) the trial court applied the wrong statute of limitations to count one of his complaint, which sought to enforce the condominium instruments; and (2) genuine issues of material fact exist as to whether the applicable statutes of limitations were tolled by virtue of the continuing course of conduct doctrine. We affirm the judgment of the court.[1]

Evidence concerning the following facts and procedural history appears in the record. Shell Beach Condominium (condominium) is a condominium complex located in East Haven and organized pursuant to the Condominium Act of 1976 (Condominium Act), General Statutes § 47-68a et seq. It is comprised of forty-seven residential units and fifty-two garages,[2] and includes a number of open-air parking spaces. The association is a nonstock corporation, owned by the unit owners of the condominium; membership in the association occurs immediately upon acquisition of title in a unit. The affairs of the condominium are conducted by a board of directors (board), all of whom are unit owners. See General Statutes § 47-80 (c) (1) (bylaws required to contain, inter alia, "[t]he election from among the unit owners of a board of directors"). Each of the individually named defendants was a member of the board when the plaintiff commenced this action.

In 1999, the plaintiff became a unit owner in the condominium when he purchased his individual unit from Salvatore Amendola, who was assisted in the sale by his daughter, Rosalie Porrello. The warranty deed, dated May 26, 1999, and recorded May 27, 1999, purported to convey unit 14 and garage 49.[3] During this transaction, the plaintiff was informed that garage 49 was the garage that would be conveyed with unit 14. Neither Amendola nor Porrello, however, discussed with the plaintiff any use of or ownership in garage 14.[4] Further, although Amendola was a member of the board at the time of the transaction, he was selling a unit that he personally owned.[5] Apart from his conversations with Amendola, the plaintiff did not speak with any member on the board at the time of the conveyance, nor did he speak with any of the individually named defendants, at or before the time of the closing.[6]

The plaintiff did not receive the condominium declaration prior to or during the closing; instead, the association mailed it to him at some point thereafter. Although the plaintiff received a copy of the declaration in 1999, he admittedly did not review that document until 2009.

In January, 2009, the plaintiff received a tax assessment that he believed to be substantially higher than prior assessments. He contacted the assessor, and was informed that he was being assessed for both garage 14 and garage 49. After this conversation, the plaintiff examined the condominium instruments[7] and came to believe that he was entitled to the exclusive use of garage 14, not garage 49.[8] The plaintiff contacted the board and demanded that it, on behalf of the association, take action to provide him with use of garage 14 pursuant to the applicable statutory authority and provisions of the condominium instruments. After the board denied the plaintiff's request, the plaintiff commenced this action by summons and a seven count complaint[9] on each of the defendants in July, 2009, in which he alleged, inter alia, that the defendants had deprived him of the use of garage 14 in violation of the condominium instruments and the Condominium Act.

The defendants filed a motion for summary judgment on January 23, 2012, in which they claimed, inter alia, that the statutes of limitations had run on all seven counts of the plaintiff's complaint.[10] After the court allowed additional time for the parties to conduct discovery, and the parties had filed additional briefs, the court heard argument on October 20, 2014. In a memorandum of decision dated February 9, 2015, the court granted the defendants' motion for summary judgment as to all counts, making several determinations relevant to this appeal. First, it determined that, pursuant to the declaration, garages are limited common elements of the condominium,[11] rather than units[12] as the defendants had contended. Second, it also determined that the declaration did not require that particular garages or parking areas be assigned to any particular units, and the defendants therefore had no ongoing duty to ensure that the plaintiff, as title owner of unit 14, be assigned garage 14. Having already concluded that there was no genuine issue of material fact concerning whether the applicable statute of limitations as to each count had run, the court accordingly rendered judgment for the defendants on all counts.[13] The plaintiff filed a motion for reargument and/or reconsideration, which the court denied. This appeal followed.[14]

I

The plaintiff argues that the court erred in rendering summary judgment on the first count of his complaint, in which he claimed that the defendants, by their conduct, had violated General Statutes § 47-75 (a),[15] because it improperly relied upon the wrong limitations

period in ruling on the timeliness of that claim. In this respect, the plaintiff makes two separate and distinct claims. First, he argues that the court erred in determining that *any* statute of limitations applies to count one because a claim under § 47-75 is equitable in nature. Second, he argues that, even if the court properly determined that the claim pleaded in his first count is subject to a statute of limitations, the court erred in determining that the applicable limitations period is the three year limitations period for tort actions.

The determination of which statute of limitations applies to a given action is a question of law over which our review is plenary. See *Fleet National Bank* v. *Lahm*, 86 Conn. App. 403, 405, 861 A.2d 545 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005). We address each of the plaintiff's claims in turn.

A

With respect to his first claim, the plaintiff argues that the court improperly determined that count one is subject to any statute of limitations because an action pursuant to § 47-75 is equitable, and equitable proceedings are not subject to statutes of limitations.[16] We disagree.

The following facts are relevant to the resolution of this claim. In the first count of the complaint, the plaintiff alleges that the defendants, pursuant to both § 47-75 and article 15 of the declaration,[17] are required to comply with and enforce the condominium instruments and the Condominium Act. Pursuant to the declaration, the plaintiff alleges that garages are limited common elements, and that he, as the title owner of unit 14, is entitled to an exclusive easement in garage 14. He further alleges that the declaration forbids any attempt to convey or mortgage the title to a unit without conveying all appurtenant interests or any attempt to sell or transfer an appurtenant interest except as part of the unit to which it is attached, and that the defendants, "in violation of the condominium instruments and the Condominium Act," have "wilfully allowed and/or permitted and/or caused" the interest in garage 14 to be severed from unit 14 and unit 14 to be sold to the plaintiff without the exclusive use of garage 14, and have "wilfully allowed and/or caused and/or permitted and/or continue to permit" another unit owner to use garage 14. (Internal quotation marks omitted.) Further, the plaintiff alleges that the defendants have failed to correct this situation, despite demands by the plaintiff that they "comply with and enforce the condominium instruments, the Condominium Act . . . and the easement in favor of the plaintiff for the exclusive use of" the garage. (Internal quotation marks omitted.) As a result of the defendants' actions, the plaintiff alleges a number of injuries, including that he has been denied the use of garage 14 and has suffered financial harm because, inter alia, he has been assessed for and has paid taxes

on that garage, paid for electricity for that garage, and the fair market value of his property has been substantially reduced. Counts two through seven of his complaint rely on most of the same operative facts as count one. In his prayer for relief, he seeks, inter alia, various forms of injunctive relief pursuant to § 47-75 and compensatory damages, but does not attempt to allocate any particular relief to any particular count.

Our case law draws a distinction where statutes of limitations are concerned between purely equitable proceedings and actions where a party can seek both legal and equitable relief. "[I]n an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute. . . . Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obliged to adhere to those time limitations." (Citations omitted.) *Dunham* v. *Dunham*, 204 Conn. 303, 326–27, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 221, 682 A.2d 106 (1996).

The situation is different, however, where a party asserts a cause of action, pursuant to which it rightfully could seek both legal and equitable relief. "[W]here a party seeks equitable relief pursuant to a cause of action that would also allow that party to seek legal relief, concurrent legal and equitable jurisdiction exists, and the statute of limitations that would be applicable to bar the legal claim also applies to bar the equitable claim." (Internal quotation marks omitted.) *Gager* v. *Sanger*, 95 Conn. App. 632, 641–42, 897 A.2d 704, cert. denied, 280 Conn. 905, 907 A.2d 90 (2006). For instance, in *Dowling* v. *Finley Associates, Inc.*, 49 Conn. App. 330, 334–35, 714 A.2d 694 (1998), rev'd on other grounds, 248 Conn. 364, 727 A.2d 1245 (1999), this court held that the plaintiff's claims for equitable relief pursuant to a provision of the Connecticut Uniform Securities Act, General Statutes § 36b-29 (a), were barred by the time limitation set forth in that statute.

A party asserting a claim pursuant to the Condominium Act can seek either legal or equitable relief; see General Statutes § 47-75 (a); and a fair reading of count one of the plaintiff's complaint and the prayer for relief therein suggests that the plaintiff sought both. Further, the plaintiff has pleaded the same essential facts in each of the counts on which he bases his claims for legal and equitable relief. See *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 411, 957 A.2d 836 (2008) (affirming trial court's determination that, where legal claims for statutory theft and conversion were time barred, "the plaintiffs' equitable claims *based on the same facts* also [were] time barred"

[emphasis added]). Under these circumstances, the court has concurrent equitable and legal jurisdiction, and the running of the applicable limitation period would bar both the plaintiff's legal and equitable claims brought pursuant to § 47-75.[18]

## B

The plaintiff next argues that, even if the court properly determined that count one alleging a violation of § 47-75 is subject to a statute of limitations, it improperly determined that count one was subject to the three year limitations period set forth in General Statutes § 52-577,[19] which governs torts generally. Noting "the unique nature of condominiums," he asserts that the Condominium Act is concerned with property rights and that the declaration provides that both the relevant statutory provisions and the condominium instruments are covenants that run with the land.[20] Arguing that the appropriate limitations period therefore must be grounded in property law and asserting that his claims are similar to adverse possession claims, the plaintiff contends that the only potentially applicable limitations period is the fifteen year period prescribed for such an action by General Statutes § 52-575 (a).[21]

The individually named defendants and the association disagree with the plaintiff and with each other as to which statute of limitations applies to claims brought pursuant to § 47-75. The individually named defendants assert that, because the plaintiff repeatedly contends that the defendants violated the Condominium Act, count one asserts a claim for a statutory violation and, thus, is subject to § 52-577. In contrast, the association claims that the plaintiff's first cause of action asserts a violation of the defendants' duties pursuant to the declaration and, therefore, is governed by General Statutes § 52-576 (a),[22] or, if interpreted as asserting a violation of the Condominium Act, by § 52-577. We conclude that either § 52-576 or § 52-577 would apply to bar this cause of action.

"[W]hen a statute includes no express statute of limitations, we should not simply assume that there is no limitation period. Instead, we borrow the most suitable statute of limitations on the basis of the nature of the cause of action or of the right sued upon." *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 199, 931 A.2d 916 (2007); see also 51 Am. Jur. 2d 533, Limitation of Actions § 129 (2000) ("The nature of the cause of action or of the right sued upon is the test by which to determine which statute of limitations applies and whether the action is barred by the running of the limitation period. Thus, for an action under a state statute that lack[s] an express limitations period, the courts look to analogous causes of action for which express limitations periods are available, either by statute or by case law." [Footnote omitted.]).

A number of cases have addressed whether an action sounds in contract or in tort. See, e.g., *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 290–93, 87 A.3d 534 (2014); *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 200–204; *Gazo* v. *Stamford*, 255 Conn. 245, 262–67, 765 A.2d 505 (2001). "[T]he fundamental difference between tort and contract lies in the nature of the interests protected. . . . The duties of conduct which give rise to [a tort action] are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. . . . Furthermore, other courts have held that, when a plaintiff seeks to recover damages for the breach of a statutory duty, such an action sounds in tort." (Citation omitted; internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 200. "On the other hand, [c]ontract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of [the] conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract. . . . In short, [a]n action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law." (Citation omitted; internal quotation marks omitted.) Id.

In this case, we are not required to resolve whether count one sounds in contract or in tort. The court in its memorandum of decision determined that the applicable statute of limitations for each count of the plaintiff's complaint began to run in May, 1999, when the plaintiff purchased unit 14 in a deed dated May 26, 1999, and recorded on May 27, 1999. The plaintiff has not argued on appeal that the court erred in relying on this date. Thus, as it also is uncontested that this action was commenced in July, 2009, count one would be outside the limitations period provided under either §§ 52-576 or 52-577 and, in the absence of an equitable basis for tolling the limitations period, would be barred.

In this light, we now consider the plaintiff's arguments that the most applicable limitations period is not one governing claims sounding in tort or in contract, but rather the time period provided in § 52-575, which defines a claimant's right to title based on adverse possession. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner. . . . A finding of adverse possession is to be made out by clear and positive proof. . . . The burden of proof is on the party claiming adverse possession." (Internal quotation marks omitted.) *Caminis* v. *Troy*, 300 Conn. 297, 311, 12 A.3d 984 (2011). The courts of this state frequently have referred to the fifteen year period provided in § 52-

575 (a) as a statute of limitations. See, e.g., id.; *Pollansky* v. *Pollansky*, 162 Conn. App. 635, 654, 133 A.3d 167 (2016); *Eberhart* v. *Meadow Haven, Inc.*, 111 Conn. App. 636, 645–46, 960 A.2d 1083 (2008). A determination that an adverse possessor meets the requirements of § 52-575 (a) prevents the original title owner from recovering on equitable claims based on title to the property. See *Caminis* v. *Troy*, supra, 299–300 (affirming trial court judgment against plaintiff seeking declaratory and injunctive relief on alternative ground that claims were "barred because they were brought outside the fifteen year limitations period").

A proper framing of the plaintiff's theory of recovery and of the relationships among the parties reveals compelling reasons to reject the plaintiff's proposal to use the limitations period set forth in our adverse possession statute. In the plaintiff's analogy, he is the rightful owner or possessor of garage 14 by virtue of the condominium instruments; therefore, if the analogy were to hold, he would be suing the defendants as the adverse possessors of the property. He does not allege or present any evidence, however, that the association or the individually named defendants, in their roles as directors of the board of the condominium, are in actual possession, or have been in possession, of garage 14 since the allegedly impermissible severance of that interest from unit 14, and no evidence in the record supports such a finding. Nor does he allege in his complaint or present any evidence showing that the current owner and user of garage 14, who has never been made a party to this action, is using it pursuant to the type of agreement or relationship with the defendants from which it could be inferred that the defendants, through that occupant, have been making the type of adverse and hostile use of the property in derogation of the plaintiff's interest that would constitute adverse possession. Cf. *Richmond* v. *Stahle*, 48 Conn. 22, 23 (1880) (possession by tenant of adversely possessing landlord may be tacked onto landlord's use when determining whether landlord has held property against third parties' possessory interest for statutory period). Instead, the plaintiff's entire theory of recovery against the defendants rests on the assertion that they breached their statutory and contractual duties to him by causing or failing to prevent the severance of garage 14 from unit 14 and by failing thereafter to take any action to return possession of the garage to him.[23] Actions that assert a breach of a duty sound in contract or tort, depending on the source of the duty alleged. See *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 200.

It is undisputed that the court is required in cases such as this one to determine what is the most analogous statute of limitations, given the "nature of the cause of action or of the right sued upon." Id., 199. The analysis employed by our Supreme Court in *Bellemare*

could support the application in this case of either the general tort or written contract statute of limitations. Determining that an action seeking damages for violation of General Statutes § 49-8, the mortgage release statute, sounded in tort, our Supreme Court noted that, despite the presence of a contract, the duty contemplated arose entirely by statute and would exist even without any specific terms in a mortgage contract. Id., 200–201 ("the mortgage contract may be silent with regard to the issuance of a release, may provide for a longer or shorter time period for the issuance of a release, or may be vague or uncertain as to the period for the issuance of a release"). Unlike this case, however, the court in *Bellemare* also noted that "[t]here [was] no allegation in this count of the complaint that a term of the mortgage contract had been breached"; id., 201; and that "the record and case file do not contain a copy of the mortgage contract" at issue there. Id., 201 n.8.[24]

Additionally, accepting the plaintiff's adverse possession argument would result in one of two unfavorable outcomes. First, at a bare minimum, it would require the courts to apply different limitations periods to a single duty, which is something that we generally seek to avoid because it would lead to an unpredictable result. See id., 201–202 (rejecting interpretation of § 49-8 that would, inter alia, result in different limitations periods depending on specific claim brought). Alternatively, it would necessitate that we apply a fifteen year statute of limitations period to *all* claims pursuant to § 47-75 (a), regardless of the type of claim asserted, the source of the right sued upon, or the particular relief requested. "[I]t is axiomatic that those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *State* v. *Courchesne*, 296 Conn. 622, 710, 998 A.2d 1 (2010). Although we note that the plain language of the statute *might* support an argument for the application of two statutes of limitations—one for those coming from the condominium instruments, another for those duties specifically arising from the Condominium Act; see General Statutes § 47-75 (a) (liability results from failure to comply "with [the Condominium Act], the condominium instruments, and the rules and regulations adopted pursuant thereto"); we conclude that the plaintiff has not presented any reason for us to risk either further confusion or a patently absurd result by applying yet a third potential limitations period that finds no explicit support within the section's text.

Finally, although the nature of the relief requested can be indicative of the nature of the right or cause of action at issue; see *Gazo* v. *Stamford*, supra, 255 Conn. 265–66 (action seeking damages for, inter alia, pain and suffering sounded in tort, not contract); it is by no means determinative in every case. See *Bellemare* v.

*Wachovia Mortgage Corp.*, supra, 284 Conn. 200–204 (relying on numerous factors, including source of underlying duty, desirability of having one statute of limitations for duty created by statute, and similarity of claim pursuant to § 49-8 to common-law action for slander of title, to determine that § 49-8 claim sounds in tort); see also *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 600–605, 894 A.2d 335 (2006) (relying on additional factors, such as structure of complaint's allegations, "distinct relief" requested for each count, and legislative history and statutory scheme of § 49-8), aff'd, 284 Conn. 193, 931 A.2d 916 (2007). The nature of the right or cause of action alleged by the plaintiff in count one is not similar in its essence to an adverse possession claim, and we reject the plaintiff's argument that the only appropriate statute of limitations for that cause of action is that set forth in § 52-575.[25] Accordingly, the trial court properly concluded that the first count of the plaintiff's complaint was time barred.

## II

The plaintiff next argues that the court improperly rendered summary judgment because it erroneously determined that five counts of his complaint[26] were time barred due to his failure to demonstrate a genuine issue of material fact as to the applicability of the continuing course of conduct doctrine. We disagree.

"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the [defendant's] motion for summary judgment is plenary. . . . Summary judgment may be granted where the claim[s] [are] barred by the statute of limitations. . . . Summary judgment is appropriate on statute of limitations grounds when the material facts concerning the statute of limitations [are] not in dispute . . . .

"[I]n the context of a motion for summary judgment based on a statute of limitations special defense, a defendant typically meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of

the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." (Citation omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 309–310, 94 A.3d 553 (2014).

The plaintiff does not argue that the court erred in relying upon the transfer of the unit from Amendola to the plaintiff in May, 1999, as the relevant point for determining when the various statutes of limitations began to run. Additionally, beyond his arguments concerning the appropriate statute of limitations, if any, governing count one, he does not contest that, without the application of a ground to justify the equitable tolling of the statute of limitations, each of the five remaining counts would be barred as beyond the applicable limitations period. See *Rickel* v. *Komaromi*, 144 Conn. App. 775, 782, 73 A.3d 851 (2013) (trespass claims subject to three year limitations period in § 52-577); *Blinkoff* v. *O & G Industries, Inc.*, 113 Conn. App. 1, 8, 965 A.2d 556 ("General Statutes § 42-110g [f], which governs CUTPA claims, provides: An action under this section may not be brought more than three years after the occurrence of a violation of this chapter" [internal quotation marks omitted]), cert. denied, 291 Conn. 913, 969 A.2d 175 (2009); *Ahern* v. *Kappalumakkel*, 97 Conn. App. 189, 192 n.3, 903 A.2d 266 (2006) ("[b]reach of fiduciary duty is a tort action governed by the three year statute of limitations contained within . . . § 52-577"); *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 94 Conn. App. 610 ("a claim brought pursuant to a contract, alleging a breach of the implied covenant of good faith and fair dealing, sounds in contract . . . [and] is therefore subject to the six year contract statute of limitations as provided in § 52-576);[27] see also part I B of this opinion (determining whether §§ 52-577 or 52-576 is applicable statute of limitations to cause of action in count one unnecessary under facts of this case).

Instead, the plaintiff asserts that these limitations periods were tolled by the continuing course of conduct doctrine. "In certain circumstances . . . we have recognized the applicability of the continuing course of conduct doctrine to toll a statute of limitations. Tolling does not enlarge the period in which to sue that is imposed by a statute of limitations, but it operates to suspend or interrupt its running while certain activity takes place. . . . Consistent with that notion, [w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." (Citations omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, supra, 312 Conn. 311.

"[I]n order [t]o support a finding of a continuing

course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong . . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . . Therefore, a precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff. . . . A second requirement for the operation of the continuing course of conduct doctrine is that there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. . . . The doctrine of continuing course of conduct as used to toll a statute of limitations is better suited to claims where the situation keeps evolving after the act complained of is complete . . . ." (Citations omitted; internal quotation marks omitted.) *Targonski* v. *Clebowicz*, 142 Conn. App. 97, 108–09, 63 A.3d 1001 (2013).

"In sum, [i]n deciding whether the trial court properly granted the defendant's motion for summary judgment, we must determine if there is a genuine issue of material fact with respect to whether the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, supra, 312 Conn. 313. "[I]f there is no genuine issue of material fact with respect to any one of the three prongs . . . summary judgment is appropriate." *Cefaratti* v. *Aranow*, 154 Conn. App. 1, 11, 105 A.3d 265 (2014), rev'd on other grounds, 321 Conn. 593, 141 A.3d 752 (question certified in plaintiff's petition), aff'd, 321 Conn. 637, 138 A.3d 837 (question certified in defendants' petition) (2016).

In support of his claim that the continuing course of conduct doctrine applies, the plaintiff makes the following contentions. First, he asserts that, pursuant to the declaration, garage 14 is assigned as a limited common element to unit 14. Other provisions of the declaration, he contests, forbid the severance of the garage from the unit, and, pursuant to the Condominium Act and the condominium instruments, the defendants had the power and obligation to both prevent this severance and take the necessary actions to correct the continuance thereof.[28] Thus, although the plaintiff asserted varying theories of recovery in his complaint, some of which do not require the existence of a duty of care,[29] the central underlying ground for each of the plaintiff's arguments concerns the duties owed to the plaintiff

"from the [Condominium] Act and the condominium instruments, which place the obligation of enforcing their provisions on the association."[30]

"Duty is a legal conclusion about relationships between individuals, made after the fact . . . . The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 649, 126 A.3d 569 (2015). "A duty . . . may arise from a contract [or] . . . from a statute . . . ." *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 375, 441 A.2d 620 (1982).

Reviewing the plaintiff's claims requires us to consider and interpret those provisions of the Condominium Act and the condominium instruments relevant to the issues raised; we restate the principles that govern this analysis. "[C]onstruing a statute is a question of law." *Somers West Towne Houses, Inc.* v. *LAS Properties Ltd. Partnership*, 108 Conn. App. 426, 432, 949 A.2d 483 (2008). "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Mickey* v. *Mickey*, 292 Conn. 597, 613–14, 974 A.2d 641 (2009).

Determining the defendants' responsibilities under the condominium instruments on which the plaintiff relies—specifically, the declaration and the bylaws—also requires resolution of questions of law. *Oronoque Shores Condominium Assn. No. 1, Inc.* v. *Smulley*, 114 Conn. App. 233, 237, 968 A.2d 996 ("The interpretation of a condominium's declaration presents a question of law. . . . We also conduct plenary review of corporate articles and bylaws." [Citation omitted; internal quotation marks omitted.]), cert. denied, 292 Conn. 922, 974 A.2d 722 (2009). "Because the [condominium] declara-

tion operates in the nature of a contract, in that it establishes the parties' rights and obligations, we apply the rules of contract construction to the interpretation of [the declaration]." (Internal quotation marks omitted.) *Harbour Pointe, LLC* v. *Harbour Landing Condominium Assn., Inc.*, 300 Conn. 254, 259, 14 A.3d 284 (2011).

"[W]e first attempt to ascertain the parties' intent from the language they used in their contract, looking at the contract as a whole and giving the contract's words their ordinary meaning and one that renders its provisions consistent. . . . Only if the language in the contract is truly capable of more than one reasonable interpretation will we look to evidence beyond the contract language for guidance as to what the parties intended." (Citation omitted.) *C & H Electric, Inc.* v. *Bethel*, 312 Conn. 843, 853, 96 A.3d 477 (2014). "The rules of construction dictate giving effect to all the provisions of a contract, construing it as a whole and reconciling its clauses. . . . Where two clauses which are apparently inconsistent may be reconciled by a reasonable construction, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions." (Internal quotation marks omitted.) *Regency Savings Bank* v. *Westmark Partners*, 59 Conn. App. 160, 166, 756 A.2d 299 (2000).

"[A] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Harbour Pointe, LLC* v. *Harbour Landing Condominium Assn., Inc.*, supra, 300 Conn. 260–61.

Even if we were to accept the plaintiff's argument that the declaration, at its inception, required the allocation of garage 14 to unit 14, and unit 14 alone, and that the defendants had breached the declaration by causing or permitting the garage to be severed from that unit, the plaintiff still would have to prove that any duty owed by the defendants to the plaintiff was continuing. As previously noted, the plaintiff relies on the applicable

provisions of the Condominium Act and the condominium instruments as the sources of that alleged duty of care.

Section 47-75 (a) provides in relevant part: "Each unit owner, and the association of unit owners, shall comply with this chapter, the condominium instruments, and the rules and regulations adopted pursuant thereto. Failure to so comply shall be ground for an action to recover damages or for injunctive relief, or for any other relief to which the party bringing such action may be entitled. Such action may be brought by the association of unit owners against any unit owner or owners or, in any proper case, by one or more aggrieved unit owners on their own behalf or as a class action. . . ." Article 15 of the declaration contains very similar language to § 47-75. See footnote 17 of this opinion.

Turning to the bylaws, § 4 (b) provides in relevant part: "The Board of Directors shall have the powers and duties necessary for the administration of the affairs of the Association and shall do all such acts or things except as by law or by the Declaration or by these Bylaws may not be delegated to the Board of Directors by the Unit Owners. . . . The Board of Directors shall have the power to enforce the obligations of the Unit Owners . . . and to do anything and everything else necessary and proper for the sound management of the Association."[31] That section also contains a number of illustrative "powers and duties" of the board.

Examining these provisions, none of them defines *how* the board of directors or association is to execute its power in any enforcement action, or when, if ever, it rightly may choose not to act at all; rather, they merely provide that the defendants "shall have the powers" to enforce the Condominium Act or the condominium instruments.[32] Thus, any duty owed by the association is *not* an absolute duty to act in all cases.[33] Furthermore, we note that these provisions stand in stark contrast to other provisions of the Condominium Act,[34] the declaration,[35] and the bylaws[36] that affirmatively require certain actions be taken or the manner in which those actions are to be taken. Finally, none of these provisions establishes any requirement that the association redress *prior* breaches of its duty to enforce the Condominium Act or the condominium instruments.

In support of his claim that the defendants had an ongoing responsibility to remedy a past breach of its duties, the plaintiff also relies on § 10 (g) of the bylaws.[37] That subsection provides: "The violation of any rule or regulation adopted by the Association, or the breach of any Bylaw contained herein, or the breach of any provision of the Declaration, shall give the Association the right, in addition to any other rights set forth in these Bylaws:

"i. [T]o enter the Unit in which, or as to which, such

violation or breach exists and to summarily abate and remove, at the expense of the defaulting Unit Owner, any structure, thing, or condition that may exist therein contrary to the interest and meaning of the provisions hereof and the Association shall not be there by deemed guilty of trespass; or

"ii. [T]o enjoin, abate, or remedy by appropriate legal proceedings, either at law or in equity, the continuance of any such breach." This provision, however, like those previously discussed, gives the board "the right" to take action, but does not dictate the manner in which that right is to be exercised or the circumstances under which the board may refrain from acting. The subsection cannot be read to impose an absolute ongoing duty on the defendants to remedy any and all breaches of the Condominium Act or condominium instruments, no matter how minor the breach or how distant in the past the violation occurred.

Even more damaging to the plaintiff's argument, however, is that the basic nature of the continuing course of conduct doctrine counsels strongly against the plaintiff's position that whatever duty that the association might have had was ongoing. "[T]he continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because *specific* tortious acts or omissions may be *difficult to identify* and may yet be remedied." (Emphasis added; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, supra, 312 Conn. 312. This court has similarly observed that "[t]he doctrine . . . is better suited to claims where the situation keeps evolving after the act complained of is complete . . . rather than one where the situation cannot change . . . ." *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 297–98, 664 A.2d 803 (1995).

We also note our Supreme Court's statements in the recent case of *Watts* v. *Chittenden*, 301 Conn. 575, 22 A.3d 1214 (2011). There, "examining the use of the continuing course of conduct doctrine, [our Supreme Court was] mindful of the nature of the doctrine as [then] Chief Judge Richard Posner of the Seventh Circuit Court of Appeals has explained . . . [that] [a] violation is called continuing signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct. The injuries about which the plaintiff is complaining in [these] case[s] are the consequence of a numerous and continuous series of events. . . . When a single event gives rise to continuing injuries . . . the plaintiff can bring a single suit based on an estimation of his total injuries, and that mode of proceeding is much to be preferred to piecemeal litigation despite the possible loss in accuracy. But in [cases in which the continuing

course of conduct doctrine is applicable, each incident increases the plaintiff's injury]. Not only would it be unreasonable to require him, as a condition of preserving his right to have [the full limitations period] to sue . . . to bring separate suits [during the limitations period] after each [incident giving rise to the claim]; but it would impose an unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them." (Internal quotation marks omitted.) *Fradianni* v. *Protective Life Ins. Co.*, 145 Conn. App. 90, 98–99, 73 A.3d 896, cert. denied, 310 Conn. 934, 79 A.3d 888 (2013). Rather, the doctrine applies to cases "that involv[e] a continuing course of conduct which over a period of years cause[s] injury. Since usually no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, it seems proper to regard the cumulative effect of the conduct as actionable." (Internal quotation marks omitted.) *Watts* v. *Chittenden*, supra, 592, quoting *Twyman* v. *Twyman*, 790 S.W.2d 819, 821 (Tex. App. 1990), rev'd on other grounds, 855 S.W.2d 619, 620 (Tex. 1993).[38]

In the present case, the original wrong, if any, was completed either upon the 1986 purported conveyance of garage 14 separate from the like numbered unit or, at the absolute latest, upon the 1999 transfer of unit 14 to the plaintiff without garage 14. All of the injuries claimed by the plaintiff arise from either, or both, of those acts or occurrences, and the plaintiff has pointed to no separate injuries that have arisen as a result of any ongoing failure by the defendants to enforce his alleged rights under the documents. These circumstances do not present the type of case that merits the application of the continuing course of conduct doctrine.

Additionally, the plaintiff has not produced any evidence that the defendants have breached any ongoing duty to enforce the condominium instruments. In particular, we note that, although the provisions of the Condominium Act and condominium instruments delineate the defendants' powers to address violations, no evidence or law has been presented by the plaintiff in support of his claims that there are genuine issues of material fact or that summary judgment is incorrect as a matter of law, from which we could conclude that the defendants' failure to do so under the facts of this case is an abuse of their discretion. No evidence or law has been presented concerning the circumstances under which the choice not to enforce a provision of the condominium instruments constitutes a breach of the association's duty. Further, we also note that there is evidence that the deed purporting to convey garage 14 separately from unit 14 was executed in 1986 by the developer; see footnotes 23 and 25 of this opinion; and no evidence has been submitted that the garage and unit, if they were originally required by the declaration

to be conjoined, ever *have* been conjoined in the same owner.

In summary, the plaintiff has not raised a genuine issue of material fact in this case that requires or justifies application of the continuous course of conduct doctrine, and we therefore decline the plaintiff's invitation to apply it.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Because we affirm the judgment on the basis that the plaintiff's claims are time barred, we do not consider the plaintiff's arguments that the court improperly determined that other grounds existed for granting the motion for summary judgment as to his claims of trespass and unfair trade practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

[2] Although a point of contention in the trial court, we do not need to determine conclusively whether the court properly determined that, pursuant to the terms of the condominium declaration, garages are limited common elements and not separate units. Even if we were to conclude that the court properly determined that garages are limited common elements under the declaration, the plaintiff cannot prevail on the remaining aspects of his claim that the defendants owed, and continuously breached, any duty they had as to him. Consequently, we also do not address the plaintiff's arguments that certain actions by the defendants in 2009 tolled the statute of limitations, as the plaintiff explicitly premises these arguments on this court's determination that, contrary to the trial court's memorandum of decision, the garages are separate units.

[3] Pursuant to the warranty deed, the plaintiff received "all that certain real property . . . known as 2 Old Town Highway, Unit #14, and Garage #49, East Haven, CT . . . ." On the date of this conveyance, however, Porrello, and not Amendola, was the record owner of garage 49.

[4] There is no indication in the record that Amendola or Porrello ever had used or owned garage 14, which, from April 1, 1986, appears to have been owned and used by the owner of unit 19. See footnotes 23 and 25 of this opinion.

[5] Indeed, Amendola was not a party to the underlying action, and the court noted in its memorandum of decision granting summary judgment that "the plaintiff has not alleged any legal relationship or agency between the defendants and Amendola."

[6] In fact, most of the individually named defendants were not unit owners when the plaintiff purchased his unit.

[7] Pursuant to General Statutes § 47-68a (d), " '[c]ondominium instruments' " include: the declarations, bylaws, survey maps, and plans recorded and filed pursuant to chapter 825 of the General Statutes; any exhibit, schedule, or certification appended to, and recorded or filed with, any declaration, bylaw, survey map, or plan; and any amendment or certification of a declaration, bylaw, survey map, or plan made in accordance with the Condominium Act.

[8] Certain other facts informed the plaintiff's belief that he had an exclusive right to garage 14. Garage 14 is attached to the building in which the plaintiff's unit is located; however garage 49 is considerably farther away. Additionally, at least some of the garages do not have separate meters for electricity, but, instead, are metered through the like numbered unit to which they are attached.

[9] In this complaint, the plaintiff asserted the following causes of action against the defendants: violation of General Statutes § 47-75 (count one); breach of fiduciary duty (count two); fraudulent misrepresentation (count three); trespass (count four); CUTPA (count five); negligent infliction of emotional distress (count six); and "tortuously" breaching the implicit covenant of good faith and fair dealing (count seven).

[10] At the time that the defendants filed their motion for summary judgment, the defendants were represented jointly by the same law firms. Subsequently, on August 31, 2012, counsel for the association withdrew representation as to the individually named defendants, and the association and the individually named defendants are represented separately in this appeal.

[11] Pursuant to § 47-68a (g), a limited common element within the meaning of the Condominium Act "means and includes those common elements

designated in the declaration as reserved for the use of a certain unit or units to the exclusion of other units." A common element, in turn, is any part of a condominium that is not a unit. General Statutes § 47-68a (e). Subsections (d) and (h) of the declaration explicitly incorporate these definitions, but then each provide specific examples of what shall be considered a common element and limited common element, respectively, in the condominium.

[12] A "unit" in the Condominium Act is defined by § 47-68a (b) as "a part of the property including one or more rooms or designated spaces located on one or more floors or a part or parts thereof in a building, intended for any type of independent use, and with a direct exit to a public street or highway or to common elements leading to such street or highway." In light of our decision, it is not necessary for us to determine if garage 14 is a unit or a limited common element.

Article 2 (b) of the declaration defines a unit as "a part of the property including one or more rooms or enclosed spaces or recessed balconies and recessed decks located on one or more floors or parts thereof in a building intended for the uses as are more particularly defined in Article 9 of this Declaration, and with a direct exit to a common element leading to a public street or highway. It shall comprise one of the separate and numbered units which are designated in Schedule C attached hereto and made a part hereof, each of which is more particularly described in the Floor Plans of the building referred to in Article 4 hereof, excluding, however, all spaces and improvements lying beneath the undecorated and/or unfinished inner surfaces of the perimeter walls, trim, and floors, and above the undecorated and/or unfinished inner surfaces of the ceilings, and further excluding all spaces and improvements lying beneath the undecorated and/or unfinished inner surfaces of all interior bearing walls and/or bearing partitions, and partition walls between separate Units and between Units and the Common Elements and Facilities, and further excluding all pipes, ducts, wires, conduits and other facilities running through any interior wall or partition for the furnishing of utility services to other Units or Common Elements. A [U]nit shall include all doors installed within or providing access to a Unit and the heating facility and all window glass installed in any wall or partition in or adjacent to a Unit."

[13] Although disposing of the entire case by determining that there was not a genuine issue of material fact and that the defendants were entitled to judgment as a matter of law with respect to their statutes of limitations defenses, the court also determined that separate grounds existed for granting the motion as to the fraudulent misrepresentation, trespass, CUTPA, and negligent infliction of emotional distress claims. On appeal, the plaintiff does not challenge the court's decision as to his fraudulent misrepresentation and negligent infliction of emotional distress claims.

[14] We address a preliminary matter before considering the merits of the plaintiff's arguments. It is uncontested that the condominium in question was created prior to January 1, 1984, and, therefore, generally is governed by the terms of the Condominium Act and not the Common Interest Ownership Act, General Statutes § 47-200 et seq. (Common Interest Ownership Act). See General Statutes § 47-214. Despite this uncontested fact, certain defined provisions of the Common Interest Ownership Act are applicable to preexisting common interest communities. See General Statutes § 47-216. Because the parties generally have neither raised nor briefed the potential applicability of these provisions, however, we will analyze the issues raised primarily pursuant to the applicable provisions of the Condominium Act.

[15] General Statutes § 47-75 (a) provides: "Each unit owner, and the association of unit owners, shall comply with this chapter, the condominium instruments, and the rules and regulations adopted pursuant thereto. Failure to so comply shall be ground for an action to recover damages or for injunctive relief, or for any other relief to which the party bringing such action may be entitled. Such action may be brought by the association of unit owners against any unit owner or owners or, in any proper case, by one or more aggrieved unit owners on their own behalf or as a class action. If any such action results in a final judgment or decree in favor of the party instituting such action, such judgment or decree may incorporate a provision for reasonable attorney's fees, as specified in such judgment or decree, to be paid by the party against whom such judgment or decree is entered."

[16] To support his claim that a claim brought pursuant to § 47-75 is equitable in nature, the plaintiff urges us to take cognizance of the "unique amalgamation of property, contract, and tort law" at work in the Condominium Act. Thus, he asserts that an action to enforce the condominium instruments and the Condominium Act is akin to an action to enforce a restrictive covenant, which may be enforced by an injunction, and relies upon both the nature of the relief that he seeks as well as the equivalent provision in

the Common Interest Ownership Act to show that a § 47-75 action is equitable. See General Statutes § 47-278 (a) ("A declarant, association, unit owner or any other person subject to this chapter may bring an action to enforce a right granted or obligation imposed by this chapter, the declaration or the bylaws. The court may award reasonable attorney's fees and costs.").

[17] The pertinent language of article 15 of the declaration essentially incorporates the text of § 47-75 (a) and broadens its application. Article 15 provides in relevant part: "All present and future Owners, tenants, and occupants of Units and the Association of Unit Owners shall be subject to and shall comply with [the Condominium Act], the provisions of this Declaration, and the Bylaws, attached hereto and as they may be amended from time to time, as well as to such regulations as may be adopted by the Board of Directors of the Association, pursuant thereto. Failure to so comply shall be ground for an action to recover damages or for injunctive relief or for any other relief to which the party bringing such action may be entitled. Such action may be brought by the Association against any Unit Owner or Owners, or, in any proper case, by one or more aggrieved Unit Owners on their own behalf or as a class action."

[18] Because of this determination, the plaintiff's remaining arguments require little attention. We note that the plaintiff's contention that his action is similar to one to enforce a restrictive covenant would not necessarily exempt his cause of action from being time barred. See General Statutes § 52-575a ("[n]o action or any other type of court proceeding shall be brought to enforce a private restriction recorded in the land records of the municipality in which the property is located or a notation on a filed map pertaining to the use of privately owned land . . . unless such action or proceeding shall be commenced within three years of the time that the person seeking to enforce such restriction had actual or constructive knowledge of such violation").

[19] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "[T]he three-year limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in [General Statutes] § 52-584 or another section." (Internal quotation marks omitted.) *Travelers Indemnity Co.* v. *Rubin*, 209 Conn. 437, 441, 551 A.2d 1220 (1988). "The date of the act or omission complained of is the date when the . . . conduct of the defendant occurs . . . ." (Internal quotation marks omitted.) *Certain Underwriters at Lloyd's, London* v. *Cooperman*, supra, 289 Conn. 408; see also *Farnsworth* v. *O'Doherty*, 85 Conn. App. 145, 150, 856 A.2d 518 (2004) ("[t]he three year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury" [internal quotation marks omitted]).

[20] Given this characterization, as well as the clear centrality to the plaintiff's claim of the provisions in the declaration that forbid the severance of interests appurtenant to a unit, we note the failure of the parties to consider the potential applicability of General Statutes § 52-575a. See footnote 18 of this opinion. Because the parties have limited their arguments to three potential statutes of limitations, however, and have not briefed this issue, we do not consider whether this statute of limitations governs the plaintiff's claim.

[21] General Statutes § 52-575 (a) provides: "No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues or within fifteen years next after such person or persons have been ousted from possession of such land or tenements; and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless within such fifteen-year period, any person or persons claiming ownership of such lands and tenements and the right of entry and possession thereof against any person or persons who are in actual possession of such lands or tenements, gives notice in writing to the person or persons in possession of the land or tenements of the intention of the person giving the notice to dispute the right of possession of the person or persons to whom such notice is given and to prevent the other party or parties from acquiring such right, and the notice being served and recorded as provided in sections 47-39 and 47-40 shall be deemed an interruption of the use and possession and shall prevent the acquiring of a right thereto by the continuance of the use and possession for any length of time thereafter, provided an action is commenced thereupon within one year next after the recording of such notice. The limitation herein prescribed shall not begin to run against the right of entry of any owner of a remainder or reversionary

interest in real estate, which is in the adverse possession of another, until the expiration of the particular estate preceding such remainder or reversionary estate."

[22] General Statutes § 52-576 (a) provides in relevant part: "No action . . . on any contract in writing . . . shall be brought but within six years after the right of action accrues . . . ." "[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. . . . Although the application of this rule may result in occasional hardship, [i]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action. . . . While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. . . . The true test for determining the appropriate date when a statute of limitations begins to run is to establish the time when the plaintiff first successfully could have maintained an action. That is, an action cannot be maintained until a right of action is complete and hence, the statute of limitations cannot run before that time. . . . A cause of action does not accrue for the purposes of a statute of limitations until all elements are present, including damages, however trivial. However, the occurrence of an act or omission . . . that causes a direct injury, however slight, may start the statute of limitations running against the right to maintain an action even if the plaintiff is not aware of the injury, and even if all resulting damages have not yet occurred; it is sufficient if nominal damages are recoverable for the breach or for the wrong, and where that is the case, it is unimportant that the actual or substantial damage is not discovered or does not occur until later. The fact that the extent of the damages cannot be determined at the time of the wrongful act does not postpone the running of the statute of limitations." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Rosenfield* v. *I. David Marder & Associates, LLC*, 110 Conn. App. 679, 685–86, 956 A.2d 581 (2008).

[23] In a warranty deed dated April 1, 1986, however, the developer, Shell Beach, Inc., purportedly conveyed garage 14 to the purchaser of unit 19, George J. Lepofsky, trustee. The deed provided that "Residential Unit No. 19 of Shell Beach Condominium . . . and Garage Unit Nos. 14 and 15 of Shell Beach Condominium . . . are conveyed . . . ."

[24] We reiterate that we do not determine which of these two statutes of limitations—§§ 52-576 (a) or 52-577—*definitively* applies to count one.

[25] Even if we were to accept the plaintiff's invitation and apply the limitations period within § 52-575 to count one of the plaintiff's complaint, his claim still would be time barred. The developer assigned the interest in garage 14 separately from unit 14 in 1986, when it included garage 14 in the deed conveying unit 19. See footnote 23 of this opinion. No evidence has been presented that, since 1986, garage 14 was ever used or owned by an owner of unit 14, or that any of the defendants have had a possessory interest in that garage. Further, the deed transferring unit 14 to the plaintiff in 1999 did not make any reference to garage 14. Thus, this action, commenced in 2009, would have occurred twenty-three years after the "wrong" committed in 1986 by the developer, e.g., the definitive act, occurrence, or breach for the purpose of beginning the limitations period within §§ 52-575, 52-576, or 52-577.

[26] See footnote 13 of this opinion.

[27] We note that the plaintiff alleges that the defendants "tortiously" breached the covenant of good faith and fair dealing in count seven. Although the court does not have to accept the label that a party appends to its cause of action; see, e.g., *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, supra, 311 Conn. 290 ("[O]ne cannot bring an action [under both theories, however] merely by couching a claim that one has breached a standard of care in the language of contract. . . . [T]ort claims cloaked in contractual language are, as a matter of law, not breach of contract claims." [Internal quotation marks omitted.]); we recognize that "the same course of conduct may sound both in tort and in contract . . . and the court should apply the relevant statute of limitations to each claim." (Citation omitted.) *Hill* v. *Williams*, 74 Conn. App. 654, 660, 813 A.2d 130, cert. denied, 263 Conn. 918, 822 A.2d 242 (2003). Nevertheless, even if we were to accept that this count sounds in tort, and not in contract, it would not help the defendant. If § 52-576 is inapplicable, this claim would be governed then by General Statutes §§ 52-577 or 52-584, both of which are subject to a three year repose period.

[28] During oral argument before this court, the plaintiff referred to the ongoing duty of the defendants as a "continuing duty of disclosure." The plaintiff did not brief this theory, however, instead asserting that the duty of the defendants was to enforce the condominium instruments and remedy any breaches thereof. "[I]t is well settled that arguments cannot be raised for the first time at oral argument." *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 328 n.20, 71 A.3d 492 (2013).

[29] For instance, "in Connecticut, [t]he essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." (Internal quotation marks omitted.) *Boyne* v. *Glastonbury*, 110 Conn. App. 591, 601, 955 A.2d 645, cert. denied, 289 Conn. 947, 959 A.2d 1011 (2008).

[30] We note that, although the plaintiff contends that "Connecticut courts have concluded that condominium associations owe duties to unit owners . . . [and] [s]everal courts have expressly concluded that condominium instruments create duties owed to unit owners," he does not attempt to define more specifically, in either analysis or through citation to relevant authority, the particular type of duty that he contends exists in *this* case. (Citations omitted.) Rather, the plaintiff grounds his entire argument as to both the existence and ongoing nature of the defendants' duty strictly on the applicable statutory authority and provisions of the condominium instruments.

[31] An amendment, executed subsequent to the commencement of this action, modifies the language in § 4 (b) (14) of the bylaws in ways nonmaterial to this analysis.

[32] Indeed, § 47-75 (a) itself suggests that the responsibility to enforce the Condominium Act or the condominium instruments is not exclusively in the association in all cases, as it explicitly allows a unit owner to enforce the condominium instruments and the Condominium Act "in any proper case."

[33] In another context, our Supreme Court has opined as to the proper method for appraising a decision by an association: "When a court is called upon to assess the validity of [an action taken] by a board of directors, it first determines whether the board acted within its scope of authority and, second, whether the [action] reflects reasoned or arbitrary and capricious decision making." (Internal quotation marks omitted.) *Weldy* v. *Northbrook Condominium Assn., Inc.*, 279 Conn. 728, 734, 904 A.2d 188 (2006). Further, various provisions of the Restatement (Third) of Property similarly suggest that the association and the board, although owing duties to unit owners in the exercise of their authority, are not required to take action in all cases. See 2 Restatement (Third), Property, Servitudes § 6.13 (1), p. 233 (2000) ("[i]n addition to duties imposed by statute and the governing documents, the association has the following duties to the members of the common-interest community . . . *to act reasonably in the exercise of its discretionary powers including . . . enforcement*" [emphasis added]); see also id., § 6.14, p. 268 ("[t]he directors and officers of an association have a duty to act in good faith, to act in compliance with the law and the governing documents, to deal fairly with the association and its members, and to use ordinary care and prudence in performing their functions").

Finally, certain provisions of the Common Interest Ownership Act clarify which actions by an association are mandatory and which are discretionary, and support a clear inference that enforcement, on the whole, is generally subject to the association's and the directors' discretion. See General Statutes § 47-244 (a); see also Public Acts 2009, No. 09-225, § 20 (clarifications making more explicit which duties are discretionary and which are mandatory in § 47-244 [a], applicable as of date of passage, July 8, 2009). Other provisions provide that the board of directors is not required to take any enforcement action if it determines that one of four specified circumstances is met; General Statutes § 47-244 (g); and allows the board to choose to take an enforcement action in one case, but not another, as long as the choice is not arbitrary or capricious. General Statutes § 47-244 (h). These latter provisions, which would generally be applicable to condominiums that were created before 1984; see General Statutes § 47-216 (a); are technically inapplicable in this case, as they became effective after this case had commenced. See Public Acts 2009, No. 09-225, § 21 (added subsections [g] and [h] to § 47-244, effective July 1, 2010). Nevertheless, their existence provides further support for our position, in that they demonstrate legislative affirmance of preexisting common law principles.

[34] For instance, General Statutes § 47-84 (a) provides in relevant part that "damage to or destruction of any building or improvement located on the

condominium parcel or serving the condominium shall be promptly repaired and restored by . . . the association, using the proceeds of insurance, if any, on such building or improvement for that purpose . . . ." See also General Statutes § 47-71 (h) and (i) (requiring association to record specified information on annual basis).

[35] Article 25 (e) of the declaration requires the association to provide its books and records to a first mortgagee when the request is received reasonably in advance of the examination and in writing. Article 26 provides that the association "shall at all times keep an adequate reserve fund for the replacement of common elements" and that the fund be maintained through monthly payments rather than special assessments. Prior to an amendment in 1987 that removed the article from the declaration, article 27 required that the association maintain a separate budget for the operation, care, and upkeep of the swimming pool, tennis court, and community building that would have been built on a separate tract.

[36] Section 4 (i) of the bylaws requires that the board must elect certain officers at the annual organization meeting of each new board. Section 5 (d) makes it "the duty of the Secretary to mail a notice for each annual or special meeting" to all unit owners and dictates the timing and contents of such notice. Section 10 (f) requires the association to provide various information to any unit owner that requests it in writing and, depending on the information requested, requires that information be delivered either promptly or within fifteen days of the association's receipt of the request.

[37] An amendment, executed subsequent to the commencement of this action, modifies the language in § 10 (g) (iv) of the bylaws in ways nonmaterial to this analysis.

[38] Indeed, circumstances falling between these two extremes generally will not merit the application of the continuing course of conduct doctrine. See *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 664, 127 A.3d 257 (2015) ("In between the case in which a single event gives rise to continuing injuries and the case in which a continuous series of events gives rise to a cumulative injury is the case in which repeated events give rise to discrete injuries . . . . [In such a case] the damages from each discrete act . . . would be readily calculable without waiting for the entire series of acts to end. There would be no excuse for the delay. And so the violation would not be deemed continuing." [Internal quotation marks omitted.])